The next case in our call this morning is Agenda Number 18, Case Number 109-137, Brian T. Hubbell v. Bi-State Development Agency of the Illinois-Missouri Metropolitan District, etc. We'll wait just a moment for the courtroom to clear. Good morning, and may it please the Court, my name is Josh Vincent, and I represent the defendant appellant Bi-State, I'm sorry? People still moving in the back. Oh, I apologize. You may proceed. Thank you. Once again, for the record, my name is Josh Vincent, and I represent the defendant appellant Bi-State Development Agency in this case. This case is before the Court on a Certificate of Importance from the Fifth District under Rule 316. The issue presented is whether Bi-State is a local public entity within the meaning of the Tort Immunity Act. That issue is potentially case dispositive because it's undisputed that the lawsuit in this instance was not filed within a year of the accident, and as a result, if Bi-State is a local public entity, the lawsuit is untimely and must be dismissed with prejudice. The peculiar thing about this case is that almost 25 years ago, the Fifth District Appellate Court, in a case called Grady v. Bi-State, addressed this very issue and held squarely, without question, that Bi-State is a local public entity within the meaning of the Tort Immunity Act. And then a year after that, in a case called Cooper, the Fifth District made the same ruling. And then in a case five years after that, in 1992, called McClintic, the Court yet again cited Grady for the proposition that Bi-State is a local public entity subject to the Tort Immunity Act. So naturally, when this case was filed, Bi-State moved to dismiss on the basis that it was not timely filed within the one-year limitations period under the Tort Immunity Act, and it cited Grady, Cooper, and McClintic. And then something extraordinary happened. The Circuit Court judge convened a hearing on the motion to dismiss. And at that hearing, the judge took evidence in the form of the appellate court record from Grady 24 years earlier, also examined the briefs that were filed in the Grady appeal, and decided that he disagreed with them, and that the decision of the appellate court in Grady was not binding on him and was not to be followed, and denied Bi-State's motion to dismiss. Now, that ultimately drew a supervisory order from this court that directed the circuit judge to grant Bi-State's motion for a Rule 308 appeal on the certified issue of whether Bi-State is a local public entity within the meaning of the act. And so then the case was pushed up to the Fifth District Appellate Court, where again, something rather extraordinary occurred. Despite the fact that the court had ruled clearly 24 years earlier that Bi-State was a local public entity and reaffirmed that decision in two subsequent rulings, the appellate court, I think in violation of the horizontal stare decisis doctrine, decided that Grady misstated the law. And I say that was extraordinary because this court has made it pretty clear what the standards are under stare decisis when an appellate court, particularly in the context of a matter of statutory construction, is going to deviate from such longstanding precedent. You have to show that there is a clear constitutional violation or issue at play there, and there is none here. I'll explain that in a minute when I get to the merits. Or you have to show that there's some serious detriment or risk of public prejudice if the precedent is not overturned or changed. And that standard was clearly not met in this case either. And I'll tell you why. Because I think there's three very clear and direct paths that you can use in the context of statutory interpretation to establish why Bi-State is a local public entity. The first one is very direct, sort of sticking with the mass transit approach, kind of the direct flight. The Illinois Constitution, Article 7, Section 1, says that a unit of local government is a constitutional unit of local government as designated by law. That's what the Constitution says. Well, in 1971, the legislature passed the Transportation Cooperation Act, which said that interstate compacts, which are responsible for mass transit, are units of local government. Bi-State, it's undisputed, is an interstate compact that is responsible for mass transit in the greater St. Louis metropolitan area. And therefore, it is clearly established by law that Bi-State is a unit of local government within the expressed meaning of Article 7, Section 1 of the Constitution. I think that pretty much nails it. And that was the position that Justice Sperlman took in dissent from that decision by the Fifth District. The second route that you can get to the conclusion that Bi-State is a unit of local government or a local public entity is just based on the plain language of the Act. There's two components. Is it a governmental entity and is it local? Certainly it is a governmental entity. That's really not even disputed by the plaintiff in this case. It operates mass transit. It is responsible for infrastructure like streets and roads and bridges and airports. It has an eminent domain power. It is almost entirely publicly funded. So it's clearly government. There's no question about that. When created by the compact, it was designated a body corporate and politic. So there's no question that it's a public entity. And insofar as the question of whether it's local, it operates within a very confined region of Illinois and Missouri, basically a six-county area on either side of the Mississippi River. Its members, although appointed by the governors of each state, are selected from panels chosen locally by the county board. So they are local commissioners. That's where they come from. The state, neither Illinois nor Missouri, is financially responsible for judgments against Bi-State. So it's very clearly on just the straight-up statutory interpretation, is it a governmental entity? Unquestionably, it is. Is it local? Unquestionably, it is. The third route that you can get there is from the issue of sort of legislative acquiescence because, and that kind of comes back a little bit to the point of stare decisis, when you have an opinion by the appellate court dating back to 1987, as well as subsequent opinions since then that have all held that Bi-State is a unit of local government or a local public entity, and the legislature has amended the definition of a local public entity within the Tort Immunity Act six times since then without ever changing it to exclude Bi-State, then that is a very clear indication that the legislature, which is presumed to be aware of the court's decisions, agrees with them. And so there's three dead, solid, perfect reasons why Bi-State is a unit of local government, a local public entity that is entitled to the protections of the Tort Immunity Act, making this case untimely. I do want to come back for a moment to this issue of stare decisis because I think that's a significant jurisprudential concern in this case. You know, in cases like Mackey v. Frelk and Okasik, decided more recently, you know, in Mackey you look at a case like that, in that situation the court was confronted with the question of whether it should adopt comparative fault in Illinois. This was back in 1968 and the court said, too big a change, we can't do it. And then about 13 years later you have Alvis v. Rybar, which adopted comparative fault. So there was a change in that precedent. It's a judicial policy case, not a statutory construction case, but what's significant about it is that the court was compelled to make that change because of the experience within the jurisprudence that juries were effectively nullifying the concept of contributory negligence when a plaintiff was just barely at fault. They weren't finding them, or were not finding it in their favor. So it was jury nullification that led, ultimately, to the court's adoption of comparative fault. So it was a significant change, clearly one of those examples of a change that was compelled by serious detriment to the public if the change did not occur. And then you have a case like Okasik. Okasik, a circumstance involving the 2622 provisions in our Code of Civil Procedure, and there was clear confusion in the court system. Confusion over what the legislature intended when it adopted or reenacted a portion of 2622, using a portion that predated this court's decision at best. So there was clear confusion and a need. At that point, certain appellate courts within the 4th District had, or panels, had disagreed with one another. Fair situation where horizontal stare decisis wouldn't necessarily apply. This case does not present any of those circumstances. There was absolutely no legal justification for the 5th District to have completely disregarded the prior decisions in the case law, and simply determined that it should decide the question anew. That this was as if it were some new question that the court was free to decide almost de And that's not how stare decisis works. As this court has pointed out many times, it's essential to stability. There are courts, the legislature relies on the court's decision in this respect. The public relies upon them. Even the State of Missouri, which is our partner in the compact on Bi-State, has relied on the decision in Grady from 24 years ago for some of its jurisprudence in recognizing that Bi-State is a unit of local government in Missouri as well. The reasoning or the rationale of the 5th District is completely insupportable. It seizes upon bits and pieces of Article 9 of the Tort Immunity Act, mischaracterizing them, misstating them. It says that Bi-State is required under Section 9-107 to levy taxes, and that that violates the compact, completely ignores the language in 9-107 that says a local public entity doesn't have to levy taxes, but may have taxes levied on its behalf, which is precisely how Bi-State operates, absolutely no different than the circumstances that were confronted by this court in the Carver v. Sheriff of LaSalle County case. Exact same issue. Court completely disregards that. Very similar disregard for the law with regard to 9-106. In 9-106, the 5th District said, well, it imposes an obligation that Bi-State collect money in order to pay its liabilities. That's part of 9-106. Well, there's nothing about that that's inconsistent with the compact. The compact itself grants the power to Bi-State to use fares and revenue and collect fares and make charges in order to raise revenue to pay its liabilities. So there's absolutely no inconsistency there whatsoever. What the 5th District really ignored is that the test under these circumstances is whether the laws passed by one state actually interfere with the interests of the other state. And in that respect, our Tort Immunity Act does not do that. There is comparable legislation in Missouri that recognizes Bi-State as a unit of local government and grants it very similar protections. In that being, counsel, what level of consideration should we give to that? I'm sorry, what level of consideration should we give to the fact that Missouri has deemed this Bi-State a local public entity under Missouri law? I don't think that that's a significant component to this, only to the extent that it buttresses how it's treated in Illinois. It's consistent. It's consistent. It's consistent with U.S. Supreme Court decisions that have recognized that Bi-State, not Bi-State, but entities like Bi-State that are interstate compacts are not arms of the state, also characterizing them as units of local government. So it's almost, I would say, in the nature of comedy in that sense, sort of the federal deference to certain state rules. Almost I think the same concept would apply here. It's a matter of comedy, recognizing the consistency. Unless the court has any questions, I think this is a pretty clear-cut case that calls for answering the certified question in the affirmative, finding that Bi-State is indeed a unit of local government, a local public entity entitled to the protections of the Tort Immunity Act. I think the decision below needs to be reversed. I think the court has to remand with instructions to dismiss the plaintiff's complaint with prejudice. Unless the court has questions, thank you for your time this morning. May it please the court, counsel, Bruce Cook for the plaintiff, Brian Hubbell. This court Your name, sir? Excuse me. I'm sorry. Could you give us your name, please? Sir? Could you give us your name, please? Oh, Bruce Cook, Your Honor. I wasn't close enough to the mic for the plaintiff, I believe, Brian Hubbell. Thank you, sir. Thank you. This court held in 1959 that sovereign immunity for local public governments was based on a rotten foundation, that it was derived from the divine right of kings, and you found that, you know, that local governments, I guess, weren't kingly. And you held that it was not part of the common law of the state of Illinois any longer. And from that, the legislature enacted certain immunities protecting local units of government. Now, Bi-State Development Company has a ten-story building located on the riverfront in St. Louis, Missouri, where all of their executive officers are, where most of their employees are, and they have come to you here, and have come to the court system, claiming that they are a local government in the state of Illinois. Actually, they say that they are a local public entity. There's nothing local about them. They are public. But they are a quasi-federal governmental body. As I have cited in my brief, that in their laws, which are not Illinois' laws, and are not Missouri's laws, they state, and I state on page six of my brief, as an interstate compact entity, the agency is not governed by the provisions of state law, but by the provisions of the agency compact. As the court is well aware, states may not, without permission of Congress and a congressional enactment, enter into agreements with each other. At the time that this matter came up, the state of Missouri and Bi-State were in a very public spat, where the now-Senator Claire McCaskill wanted to audit their books, and they said, no, you don't have any authority over us. You cannot audit our books. It was surprising to become aware and surprised by the authority of Grady. And I believe that you have ruled that on horizontal stare decisis that a court should overrule existing decisions that are unworkable or badly reasoned. It didn't make any sense. And indeed, the holding of the appellate court in the Hubble decision was, is that governments created by interstate compact are not local public entities, not only Bi-State, all of the rest of them. And there are, you know, 20 or 30 of them. It didn't seem to make much sense, being a resident of St. Clair County, how Bi-State could be a unit of local government or a local public entity in the state of Illinois when they were over there. And so we checked the appellate court record to look at how this opinion, which appeared to be bizarre, with very respected jurists deciding it, how they could decide that. And looking at the case, and I've cited it in my brief, it was largely a small claims case. Bus accident, out-of-state plaintiff, that was in the period of time that interrogatory answers were made part of the court file. So I could see that. The special damages were $1,500 or something of that nature. Mr. Cook, are the federal decisions also wrong that have held that entities created by interstate compact agreements are not state entities? Or what's, Justice? They're not state agencies for purposes of immunities reserved for states? The immunities can be reserved for the states and can be included in the act. They're not wrong. That, for example, in Quad Cities is that the legislature did pass, and it was approved by Congress, that the Quad City Transportation Authority is, in fact, a municipal corporation. That did not occur here. And they're trying to bootstrap themselves. They're not mentioned in the definition of local public entity. They're trying to bootstrap themselves by saying that they come under a construction where the statute says, and other local public governmental bodies. They're not local. I mean, you can, of course, hold that they're local. But there was an ex parte appeal. No one answered for the plaintiff. And in the petition for leave to appeal, and in the brief on appeal, they committed a fraud on the court. They said directly in their appeal that the bi-state transit company was created by the Local Mass Transit Act, something that the record here shows is not true. They didn't say it once. They said it four or five times. And what does an appellate court do? Well, you have a right to depend upon the fact that counsel, even if it's ex parte, as a matter of fact, they have a greater duty of disclosure that they won't dupe you. Why should Justice Carnes have looked beyond what the defendants said its corporate structure was? They said it. He accepted it. Grading was wrongly decided. It was procured by fraud. Now, should an appellate court, in terms of stare decisis, should they continue to allow a fraudulently decided opinion? Not fraudulently decided. How is this contained in the record? Sir? How is this information contained in the record? Sir, it was in the record. Fortunately, the appellate court for the 5th District had maintained the record and it's part of the record before you, both in their petition for leave to appeal and in their brief before the appellate court. They say, distinctly and definitely, in Grady, something that they admit was false in the hearing in Hubble, but they say in there that the Illinois Division of Bi-State Transit Authority was created by the local mass transit district, which, by definition, is therefore then a local public entity because it says they're municipal corporations in the end. That's not true. How can the appellate court, I mean, it was ex parte, this small claim. The motion to dismiss was not filed until three years after the case was filed. Well, that isn't part of opposing counsel's argument here. I mean, there's a lot of attention paid to what was or wasn't right in the whole Grady decision isn't the emphasis of this court rather on whether the Grady decision got it right or not. Whether or not they're a local public entity. Right, whether or not it's your de novo consideration of whether it was a local public entity. I was responding to his argument. Well, these errors in the record weren't raised by opposing counsel as justification to find that they're a local public entity now. No, that's correct. But when he raises the issue of horizontal stereo-decisus, that becomes relevant because that is the reason why Grady should be overruled. Doesn't the by-state also argue that Grady didn't rely on that misstatement? Well, you can't tell what the judge relied on except that he cited Lascance, just as Correns did. And Lascance, he said in Lascance that we've determined that local mass transit districts are a local public entity. There's no reason to cite that unless he had concluded that Lascance, by the way, which they had cited as being exactly the same as by-state, that they were created in the same manner, which was just absolutely false. So your argument is that they did rely on Lascance? Well, I don't know any other reason for them to cite Lascance. We have a constitutional provision that says what a unit of local government is. And it doesn't include interstate compact agencies. I think the decision in Crandall v. Paddock by this court, albeit dicta, where he said that in order to be a local public entity, you must be owned or operated by a unit of local government, you said that. Mr. Cooper, does it make any difference that local money is put into the agency? Ma'am, there's no local money put into the agency. St. Clair County has a mass transit district. Madison County has a mass transit district. St. Clair County chooses to contract with by-state and pay for services that by-state renders. Madison County, immediately to the north of us, chooses not to. And St. Clair County doesn't have to use, which is created, the St. Clair County mass transit district is created by the Mass Transit District Act. But if, in fact, there was an accident, a car accident, as you described, wouldn't that make St. Clair County liable as well? Why? In terms of responding on Superior, I don't think so. St. Clair County is not liable for their negligent driving of their buses. St. Clair County just buys bus service from them. They buy services from other people, and they don't have to buy them from them. They can buy them from anybody else. But unless, as I understand responding on Superior in that regard, that, you know, if you hire somebody to do something, unless you're careless in terms of how you select them, you're not liable for their negligent acts. But they're just not local. I mean, if the word local means something, which, as I understand the rules of construction, it must, I don't know how you say somebody who's from Missouri, who's not subject to the laws of the State of Illinois by their very own laws, how you can say that they're local. Now, the reason for not obeying the horizontal stare decisis of the courts is that, in fact, the decision was based on fraud. I don't think I've ever encountered that before. I doubt whether you will encounter it again. Mr. Cook, is that your answer to the argument that Grady has been in place for 25 years and the legislature has never chosen to, and they've amended the statute and they've never chosen to specifically exempt these people? You know, it is such a small issue and is in such a small area that I don't imagine that it attracted very much attention. But, you know, these statutes are supposed to be strictly construed against their enforcement because we don't have sovereign immunity for local public entities except as accepted. They're not named in that statute. The legislature could have always put in it. I mean, they started off and they just said municipalities, so forth, so on, and then they added library districts, and then they expanded, they continued to expand the coverage, but they've never expanded it to governments created by interstate compact. And if you do, aren't all of them covered? Aren't all of them covered, as Grady put it in, aren't all of them, even the ones that have specific grants of immunity in them? The state of Illinois cannot change the status of the Quad Cities Mass Transit District. They can't because it has to be approved by the United States government. It is a municipal corporation. They said it. Therefore, by definition of our Constitution referring to units of local government, municipal corporations are included. But is there any good reason to want to give? Missouri has a five-year statute of limitations. Illinois has a one-year statute of limitations. At the period of time when Grady was the law in the 5th District, Missouri had, the Supreme Court had ruled that there were no tort immunities, and then for, for, by state. And then they had a tort reform issue, and they gave them very, very limited tort immunity. Grady accords this bus company, airplane company, the airport, by state airport is protected by Illinois tort immunities, according to Grady. According to Hovell, it is not. Mr. Cook, you might answer this for no other reason than my curiosity. This allegation as to fraud in the Grady, the first Grady decision, is that what prompted the trial court to go into the facts and circumstances of the Grady decision? Yes, sir. Was there an allegation by you or counsel at the time? Yes, sir. It was an allegation, and there was a two- or three-day evidentiary hearing on what had happened in Grady. And their general counsel came in and repudiated the briefs in Grady. And they shouldn't have, it is a matter, it should be a matter of discipline within this court, and one that you should be concerned about, and that is there were false briefs filed in an ex parte, ex parte case, a very, very small ex parte case. Something very, very wrong happened in Grady, and it should not be tolerated. Thank you. Just a couple of brief points I'd like to make. First of all, with all due respect to Mr. Cook, I think he throws around the words ex parte and fraud a little loosely. An appeal is not ex parte simply because an appellee elects not to file a brief. Ex parte means that the case was heard without notice and an opportunity to be heard by the other side. That's what ex parte is. But the fact that the appellee elected not to file a brief in the Grady case does not render it ex parte. By the same token, I think Mr. Cook uses the word fraud rather loosely and improperly. Fraud has to do with facts. This is a question of law. It's a question of statutory construction. And when you're dealing with a question of law and a statutory construction, I don't see how you defraud the court. That would be like me standing up here and saying that because Mr. Cook misunderstands the U.S. Supreme Court decision in the Tahoe case, for example, which found that entities like this, entity interstate compacts, are local entities and not arms of the state, that he's trying to defraud you. That's preposterous. That's the whole sum of his argument about what happened in Grady, is that arguments were made, legal arguments were made, that in some respects were in error. Now, the court did not make any mistake in Grady. The court in Grady found specifically that Bi-State was an interstate compact created by an interstate compact approved by Congress. It did not find that it was created by the Local Mass Transit District Act. I think Mr. Cook also misstates or overstates, exaggerates, what errors were made in the Bi-State brief that was filed a quarter of a century ago. You know, there were really only two errors that were identified at this evidentiary hearing that was convened. One was, first of all, the brief at page 6, I'm talking about the appellant's brief in Grady, at page 6 did correctly represent that Bi-State was an interstate compact entity. Later on at page 10, it incorrectly stated that it was created by the Local Mass Transit District Act. That was an error. I think probably the explanation for that is that the Local Mass Transit District Act is part of what provides the funding mechanism for Bi-State, because that act is what allows local districts, like in St. Clair County, to create their own districts to pass a tax in order to fund Bi-State. So there wasn't a mistake, an error, whatever you want to call it. It's not fraud. Fraud deals with facts. Now, these again, these are legal arguments. I think it's unfair to the Grady court, and just from a matter of jurisprudence, to suggest that an appellate court, that the judges don't do their jobs. I mean, that's the essence of Mr. Cook's argument. He's saying that because the appellee didn't file a brief, and the appellate court, and mind you, this is not a situation where the court simply affirmed. In Grady, the court reversed the trial court. So I'm sure that as any appellate court would, it took care to examine what the ruling below was before reversing it, and that is a clear jurisprudential concern in this case, and to suggest that simply because the appellee elected not to file a brief in the Grady case, that somehow the appellate court abdicated its role and its authority, and simply accepted at face value what the appellant said in its brief, which the decision clearly reflects the court did not do, is absurd. It's an absurd argument. Mr. Cook cites the Carroll v. Paddock case, and he correctly points out there's some dict in that case that he's trying to use to support his argument here. The Carroll v. Paddock case was a completely different circumstance, involving a completely different aspect of the definition of what is a unit of local government. It actually was the question of what is a public business in the Carroll case. That dealt with a mental health facility, and that was a not-for-profit private corporation that really had almost no connection whatsoever to the government. It wasn't government-owned, it wasn't government-operated, it wasn't created by a government act or anything of the sort. So that case has absolutely no application here whatsoever. And as for the response to Justice Burke's question that there's no public money involved in Bi-State, that, too, is a complete misstatement by Mr. Cook. St. Clair County, as I pointed out, has established a district pursuant to the Local Mass Transit District Act, which levies a sales tax. And that sales tax money is what helps fund Bi-State. And so, yes, if Bi-State does not have the protections of the Tort Immunity Act, then, of course, the public money is placed at risk. And that defeats the entire purpose of the Tort Immunity Act. That thwarts the legislature's intent. And that's what's so wrong with the appellate court's decision in this case, in Hubble, is because, you know, if you're going to depart under horizontal stare decisis, you've got to find that there's going to be some serious prejudice or detriment to the public if you don't do it. Well, that's why Justice Bomer points out that the Hubble majority's decision turns that concept on its head because it is by virtue of the majority's decision in Hubble that the public is harmed. Because the purpose of the statute is to protect the public fist. And that's what's destroyed in this case when you take away that protection to a unit of local government. So, again, I would reiterate, I think it's a very clear-cut case. I think the court should answer the question in the affirmative. It should reverse. It should order the complaint dismissed with prejudice. Unless there's questions, thank you for your time this morning. Case number 108-923 will be taken under advisement as agenda number... Excuse me. Case number 109-137 will be taken under advisement as agenda number 18.